CLAUDIA G. SILVA, County Counsel (SBN 167868)
By: ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 5279; Fax: (619) 531-6005
E-mail: robert.ortiz@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, Stephen McCarthy, Nicolai Ramos, Michael Saunders, Jr., and Casey Dow

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS ROSS, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; DEPUTY MCCARTHY, an individual; DEPUTY RAMOS, an individual; DEPUTY SAUNDERS JR., an individual; DEPUTY DOW; and DOES 1-100, inclusive,<br><br>        Defendants. | No. 21-cv-02130-JO-VET<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AN APPEAL**<br><br>Date: July 24, 2025<br>Time: 9:30 a.m.<br>Courtroom: 4C<br>Judge: Hon. Jinsook Ohta |

No. 21-cv-02130-JO-VET

## I. INTRODUCTION

Plaintiff moves for an extension of time to file a notice of appeal pursuant to 28 U.S.C. Section 2107(c) and Federal Rule of Appellate Procedure ("Rule") 4(a)(5).  In summary, Plaintiff contends that a paralegal's abrupt departure and a medical emergency to one of Plaintiff's attorneys constitute "excusable neglect."  Plaintiff's motion should be denied for multiple reasons.

First, the motion is untimely because it was filed beyond the 60-day deadline under Section 2107(c) and Rule 4(a)(5).  The law is clear that the deadline is mandatory and jurisdictional.  As such, courts lack jurisdiction to grant a motion outside of the strict filing window.

Second, Plaintiff has not made the requisite showing of "excusable neglect" required by Supreme Court and Ninth Circuit precedent.  The failure to timely file a notice of appeal was entirely avoidable.  Plaintiff's attorneys offer only vague and conclusory claims that reflect internal firm mismanagement rather than true excusable neglect. The law demands more than unspecific excuses and bare assertions of hardship. Extensions are reserved for parties who can demonstrate that their failure to act was truly outside their control and supported by competent evidence.  Plaintiff failed to do so and his motion should be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On March 27, 2025, Defendants' motion for summary judgment was granted.  The Court dismissed Plaintiff's federal claims with prejudice. The Court declined to exercise supplemental jurisdiction over the state law claims and dismissed those without prejudice.  [Dkt. 115.]  On the same date, the Clerk entered judgment for Defendants. [Dkt. 116.]

Plaintiff's deadline to file a notice of appeal was April 28, 2025.  Plaintiff failed to appeal.  [Ortiz Decl. ¶ 4.]  Because Plaintiff failed to timely appeal, the last day for him to seek relief by requesting an extension of time to appeal was May 27, 2025.  [*Id.*]

/ / /

Between **April 28, 2025** and **May 27, 2025**, Plaintiff's attorneys continued to litigate the federal case and filed a second related lawsuit in state court.  [Ortiz Decl. ¶ 5 *see* Dkt. 123-1, 8:1-3.]  During this time, the following events and actions took place.

| Date | Events and Actions |
|---|---|
| **April 8, 2025** | Plaintiff's attorney conferred with the Deputy Clerk regarding a possible Bill of Cost hearing on April 30, 2025.  [Ortiz Decl. ¶ 5a.] |
| | Plaintiff's attorney emailed Defendants' counsel confirming Plaintiff's intent to "re-file the complaint asserting all state claims in the state court within 30 days from the order."  [Ortiz Decl. ¶ 5b.] |
| **April 9, 2025** | Plaintiff's attorney conferred with the Deputy Clerk about availability for a hearing on Bill of Costs.  [Ortiz Decl. ¶ 5a.] |
| | Plaintiff's attorney emailed Defendants' counsel confirming intent to "appeal the ruling" in the present case.  [Ortiz Decl. ¶ 5b.] |
| **April 17, 2025** | Plaintiff's attorneys filed and attempted service of a new lawsuit reasserting the state claims that were dismissed in the present case. [Ortiz Decl. ¶ 5d; *see* Dkt. 123-1, 8:1-3.] |
| **April 18, 2025** | Plaintiff's attorneys filed and served Objections to County's Bill of Costs.  [Dkt. 119.] |
| **April 23, 2025** | Plaintiff's attorney resubmitted and attempted service of the new state lawsuit. [Ortiz Decl. ¶ 5e; *see* Dkt. 123-1, 8:1-3.] |
| **May 9, 2025** | Plaintiff's attorney, Yana Henriks, sustained a complex right wrist fracture.  [Dkt. 123-2, Henriks Decl. ¶ 5.] |
| **May 13, 2025** | Plaintiff's attorney, Yana Henriks, underwent emergency surgery for a complex right wrist fracture.  [Dkt. 123-2, Henriks Decl. ¶ 5.] |
| **May 23, 2025** | Plaintiff had three attorneys, Marco Castellon, Chris Martin, and Yana Henriks, appear at the telephonic hearing on the County's Bill of Costs.  [Ortiz Decl. ¶ 5f.] |
| | Defendants' counsel conferred with Plaintiff's attorneys regarding service of the new refiled state lawsuit and confirmed that new counsel would be assigned to the case.  [Ortiz Decl. ¶ 5g.] |
| **May 27, 2025 @ 7:38 p.m.** | Plaintiff's attorney left Defendants' counsel a voicemail saying Plaintiff planned to file a motion for extension of time to appeal.  No legal or factual justification for the motion was provided.  [Ortiz Decl. ¶ 5h.] |

| @ 8:30 p.m. | Plaintiff's attorney sent Defendants' counsel an email claiming "we've been trying to get in touch with you to meet and confer." No legal or factual justification for the motion was provided. [*Id.*] |
| @ 9:18 p.m. | Plaintiff's attorney filed and served a procedurally improper Motion for Extension of Time to Appeal. [Dkt. 121; Ortiz Decl. ¶¶ 5i, 7.] |
| **May 28, 2025** | Defendants' counsel emailed Plaintiff's attorneys to confirm that Plaintiff failed to meet and confer and that his claims to the contrary was inaccurate. [Ortiz Decl. ¶ 6.] |
| **May 29, 2025** | Plaintiff's Motion for Extension of Time to Appeal was stricken for failing to comply with applicable rules. [Dkt. 122.] |

## III. ANALYSIS

**A.      Plaintiff's *Untimely* Motion for Extension is Barred Because the Filing Deadline is Mandatory and Jurisdictional.**

1.      The Untimely Motion is Jurisdictionally Barred Under Section 2107.

A court's authority to extend the time to appeal is expressly limited by statute. Specifically, Section 2107 and Rule 4 provide the sole authority and mechanism to extend the time to appeal. 28 U.S.C. § 2107(c); Fed. R. App. P. 4(a)(5)(A); *see also* Fed. R. App. P. 26(b) ("[T]he court may not extend the time to file . . . a notice of appeal (except as authorized in Rule 4)."). Section 2107 says that a district court may "upon motion filed *not later than 30 days* after the expiration of the time otherwise set for bringing appeal, extend the time for appeal. . ." 28 U.S.C. § 2107(c) (emphasis added). The appellate rule implementing the statute provides the same 30-day deadline. Fed. R. App. P. 4(a)(5)(A)(i).

This 30-day deadline is mandatory and jurisdictional. *United States ex rel. Haight v. Catholic Healthcare W.*, 602 F.3d 949, 955 (9th Cir. 2010) ("the requirement of a timely motion under Rule 4(a)(5) is a jurisdictional one."); *see Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 24-27 (Section 2107's time limitations are jurisdictional, but implementing rules are only mandatory).

/ / /

Where, as here, a party fails to file a notice of appeal and fails to move for an extension of time within the 30-day grace period, the Ninth Circuit has repeatedly held that courts lack jurisdiction to grant relief. *United States ex rel. Haight,* 602 F.3d at 954-955; *Vahan v. Shalala*, 30 F.3d 102, 103 (9th Cir. 1994); *Malone v. Avenenti*, 850 F.2d 569, 572 (9th Cir. 1988); *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir. 1986); *Pettibone v. Cupp*, 666 F.2d 333, 335 (9th Cir. 1981).[1]

Here, the Clerk entered judgment for Defendants on March 27, 2025. [Dkt. 116.] The deadline to appeal the judgment was April 28, 2025. Plaintiff did not file a notice of appeal. As such, he needed to seek an extension of time to appeal by May 27, 2025. The present motion was filed on June 5, 2025, nine days after the deadline. [Dkt. 123, 124.] Plaintiff's failure file a proper motion for an extension before the deadline prohibits the court from granting relief or reviving Plaintiff's right to appeal.

 2.  <u>Plaintiff's First Motion, Which was Stricken, is not a Filing Placeholder That Allows his Untimely Second Motion to be Considered Timely.</u>

To avoid the jurisdictional bar, Plaintiff argues that his first motion for extension of time, which was stricken from the record and is substantively different from the pending untimely motion for extension of time, acts as a placeholder to "preserve[] the Court's jurisdiction to act under FRAP 4(a)(5)." [Dkt. 123, 4:22-28; *cf.* Dkt. 121.] The argument that the untimely second motion relates back to the first motion's filing date is not supported by law.

Plaintiff concedes that his first motion was "procedurally deficient." [Dkt. 123, 4:22-26.] As such, it was "stricken from the record."[2] [Dkt. 122.] "Strike" means "to

---

[1] Other circuits are in accord with the Ninth Circuit. *Wyzik v. Employee Benefit Plan of Crane Co.,* 663 F.2d 348, 348-349 (1st Cir. 1981) (per curiam); *Shah v. Hutto*, 722 F.2d 1167, 1167-1169 (4th Cir. 1983) (en banc); *Bond v. Western Auto Supply Co*., 654 F.2d 302, 303-304 (5th Cir. 1981); *Pryor v. Marshall*, 711 F.2d 63, 64-65 (6th Cir. 1983); *United States ex rel. Leonard v. O'Leary*, 788 F.2d 1238, 1240 (7th Cir. 1986); *Mayfield v. United States Parole Commission,* 647 F.2d 1053, 1054-1055 (10th Cir. 1981); *Brooks v. Britton*, 669 F.2d 665, 667 (11th Cir. 1982).

[2] District courts have inherent power to control their docket, including the ability to strike documents. *Ready Transp., Inc. v. AAR Mfg., Inc*., 627 F.3d 402, 404 (9th Cir. 2010); *see* Fed. R. Civ. P. 83; Civ. L.R. 7.1(b), (e)(1), 83.1(a); Ohta Civil Chamber Rules p.1 ¶ 5, § II.A. Plaintiff does not challenge the Court's order striking his first motion for failing to comply with procedural rules.

- 4 -    No. 21-cv-02130-JO-VET

expunge, as from a record." And "expunge" means "to erase or destroy." *Black's Law Dictionary*, 508, 1210 (10th ed. 2015). Plaintiff ignores the legal effect of the Court's order striking the first motion, the legal effect being that the motion was rendered null and void. Thus, the second motion, which is at issue here, must stand on its own and satisfy all requirements, including timeliness. Because it was filed nine days after the jurisdictional deadline, the Court lacks authority to grant relief.

Relatedly, Plaintiff argues that the Court preserved jurisdiction because it "struck the [first] motion *without* prejudice and granted Plaintiff leave to re-file in conformity with its procedural requirements." [Dkt. 123, 4:25-28.] This argument is unavailing. Denial of the first motion without prejudice is not a tacit acceptance or grant of jurisdiction regarding a future untimely motion to extend time to appeal. *See Cel-A-Pak v. California Agricultural Labor Relations Bd.*, 680 F.2d 664, 666 (9th Cir. 1982) (noting that "[m]ere acceptance of the untimely notice of appeal will not be construed as a grant of such an extension by the district court.") Plaintiff is reading into the Court's order words and intent that are not there regarding a yet-to-be-filed motion. The court lacks such authority. *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir. 2000) (noting that a court's role is neither to issue advisory opinions nor to declare rights in hypothetical cases). If a district court had authority to sua sponte extend the appeal period absent satisfying the criteria in Section 2107(c), Congress's grant of circumscribed discretionary authority would have little or no independent force. And an appellant would be free of any responsibility to timely comply with appellate deadlines. Plaintiff's motion should be dismissed for lack jurisdiction.

3.    Plaintiff's Equitable Argument of Excusable Neglect Plays no Role in the Jurisdictional Analysis Under Section 2107(c).

Plaintiff contends that the jurisdictional defect resulting from his untimely second motion should be excused because it was "an oversight attributable to [counsel's] injuries." [Dkt. 123, 4:22-26.] Plaintiff's argument fails because the parties and this Court are bound by Section 2107's requirement of "a motion filed not later than 30 days

after the expiration of the time" to appeal.  28 U.S.C. § 2107(c).  The Supreme Court has instructed courts that concerns of equity, here, alleged excusable neglect, must give way to the "rigorous rules" of jurisdiction.  *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Additionally, Plaintiff's request subverts the public interest of establishing "certainty and stability" with respect to the finality of judgment by setting a "definite and ascertainable point of time when litigation shall be at an end. . . ."  *Hill v. Hawes*, 320 U.S. 520, 524-525 (1944) (Stone, C.J., dissenting).  Plaintiff's motion should be denied.

**B.    Plaintiff's Attorneys' Neglect in Failing to File a Notice of Appeal *and* Failing to File a Timely Motion for Extension of Time to Appeal are not Excusable.**

Plaintiff moves for an extension based on "excusable neglect," contending that a paralegal's abrupt departure and one of the firm's attorney's health issues resulted in a missed appellate deadline.[3]  [Dkt. 123-1, 6:17-7:3.]   Plaintiff's motion does not meet the standard for excusable neglect under the controlling authority of *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) and *Pincay v. Andrews,* 389 F.3d 853 (9th Cir. 2004) (en banc).

The determination of whether neglect is excusable "is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission."  *Pioneer*, 507 U.S. at 395.  The determination depends on at least four factors, including: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the moving party's control, and (4) whether the moving party's conduct was in good faith.  *Id.*  The weighing of these factors is within "the discretion of the district court."  *Pincay*, 389 F.3d at 860.  Balancing the *Pioneer* factors, the motion should be denied because the neglect of Plaintiff's attorneys was not excusable.

///

---

[3] "The good cause and excusable neglect standards have different domains.  They are not interchangeable, and one is not inclusive of the other" Fed. R. App. P. 4(a)(5)(A)(ii), Adv. Comm. Notes to 2002 Am. (internal citation omitted).  Plaintiff's motion does not seek relief on the basis of "good cause."  As such, this opposition only addresses "excusable neglect" as the basis for relief.

### 1.  Prejudice to Defendants.

Plaintiff's delays in seeking to challenge the judgment have already imposed burdens on Defendants.  Plaintiff filed a new state court lawsuit that reasserts the claims that were dismissed in this case.  [Ortiz Decl. ¶ 5d, e.]  Given that the time to appeal in this case had lapsed, Defendants made case and staffing decisions in reasonable reliance on Plaintiff's apparent decision not to appeal. The decision includes transferring case handling responsibility for the new state case to new counsel.  [Ortiz Decl. ¶ 9.]  The new counsel in the state case in the process of meeting and conferring with Plaintiff regarding a demurrer.  [Ortiz Decl. ¶ 10.]  If the motion is granted, Defendants will be simultaneously litigating the same state claims in both federal and state court.  Thus, Plaintiff's delays have imposed burdens by requiring Defendants to defend duplicative claims using different counsel in state and federal venues, and creating uncertainty and delaying finality of the federal court's judgment.  [Ortiz Decl. ¶ 11.]

### 2.  Length of Delay and Impact on Judicial Proceedings.

Plaintiff's motion fails to analyze the length of the delay and its impact on judicial proceedings.  Instead, Plaintiff incorrectly argues delay solely as it relates to the length of extension requested. [Dkt. 123-1, 6:1-10.]  When properly analyzed, the first and second *Pioneer* factors (prejudice, length of delay, and impact on judicial proceedings) converge in this case and justify denial of the motion.

The deadline for Plaintiff's motion for extension of time to appeal lapsed on May 27, 2025.  The present motion was filed on June 5, 2025, nine days after the deadline.  In the typical case asserting excusable neglect, "delays are seldom long" because the motion must be filed within 30 days of the last day for filing a notice of appeal.  *Pincay,* 389 F.3d at 861 (Kozinski, J. dissenting); *see Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("Delay always will be minimal in actual if not relative terms" given Rule 4(a)(5)'s timing requirements).   What sets this case apart is the adverse impact on judicial proceedings that have resulted in a short time.  The untimely motion and possible appeal, create uncertainty regarding the proper forum for resolution of Plaintiff's state

claims, delay finality of the federal judgment, and create unnecessary motion practice in both state and federal courts.

   3. <u>Reason for the Delay and Whether it was Within Plaintiff's Control</u>.

  The third *Pioneer* factor is the most critical in this case and weighs heavily against granting the motion.  Plaintiff's attorneys' explanations for the filing failures—a paralegal's abrupt departure and one attorney's medical emergency—do not constitute excusable neglect in the context of this case.  Where the filing delay is within the reasonable control of the moving attorney or the attorney fails to provide sufficient facts to justify the neglect, a motion for extension of time to appeal is not compelling.  *See Pincay,* 389 F.3d at 859 ("lawyers failure to read an applicable rule is one of the least compelling excuses that can be offered"); *Pioneer*, 507 U.S. at 398-399 ("we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the [deadline].").

  Plaintiff's attorneys point to *Pincay* to justify their conduct because excusable neglect was found where a paralegal misread the rule as allowing 60 days to appeal and advised the attorney incorrectly.  *Pincay,* 389 F.3d at 855.  Plaintiff's reliance on *Pincay* is misplaced because the factual circumstances and evidence proffered in that case are distinguishable.  In *Pincay*, the attorney proffered evidence that the firm maintained a "'carefully designed' calendaring system operated by experienced paralegals that [until then] had worked flawlessly."  *Id.* at 859; see *id.* at 860-861 (Berzon, J., concurring) ("the complete misfiring of a generally well-conceived calendaring system is" distinguishable from "letting court orders pile up on desks").  Unlike *Pincay*, Plaintiff's attorneys were not misled into believing that time remained to file a timely notice of appeal.  The attorneys simply failed to look into the issue or take any action.  As such, the purported "calendaring mistake" at issue here is less like the well-conceived calendaring system at issue in *Pincay*, and more akin to the "letting-court-orders-pile-up-on-desks" scenario cautioned against in *Pincay*.

///

Here, the ability to prevent the untimely filings was entirely within Plaintiff's attorneys' control. *Pioneer*, 507 U.S. 380 at 395. Plaintiff's motion declares that "[a]s soon as counsel became aware of the missed deadline, the firm acted promptly and in good faith to seek appropriate relief." [Dkt. 123-1, 7:12-16.] But this conclusory statement raises more questions than it answers. For instance, what was the calendaring system used by Plaintiff's attorneys, were there any procedures implemented to catch calendar mistakes, were any measures implemented to review calendaring after the paralegal quit, who became aware of the missed deadline, when did the person become aware of the missed deadline, how did the person become aware of the missed deadline, and what actions were taken once the person became aware of the missed deadline. Plaintiff also fails to identify when the paralegal left the firm in relation to the appeal deadline, what steps, if any, were taken to review or verify case deadlines, and why the other firm attorneys were unable to easily calculate the 30-day appeal deadline (regardless of any calendaring mistake). This is especially true as to the attorneys who actively participated in the litigation between April 28, 2025 and May 27, 2025. [Ortiz Decl. ¶¶ 5a-g.]

Moreover, the motion does not explain why one attorney's medical issues—which apparently occurred *after* the April 28, 2025 appeal deadline had already lapsed—prevented another firm attorney from handling a routine, ministerial task like filing a notice of appeal. The task does not require the participation of a senior attorney. Notably, Plaintiff's attorneys expressed their intent to appeal well before the appeal deadline. [Ortiz Decl. ¶ 5b.] Additionally, Plaintiff's attorneys were actively litigating the case prior to the appeal deadline and up through the untimely second motion for extension of time to appeal. [Ortiz Decl. ¶¶ 5a-i.] Again, Plaintiff offers no explanation why the appeal deadline was not addressed when Plaintiff clearly contemplated an appeal and was actively litigating other aspects of the case, like the Bill of Costs. [*Id.*]

If Plaintiff's conduct is deemed excusable, virtually every attorney who misses an appeal deadline will claim that they are entitled to a "do-over" because they miscounted,

miscalendared or misremembered the date. Such an outcome is untenable and does not comport with the intent of Section 1207 or Rule 4(a)(5). Accordingly, the third *Pioneer* factor weighs strongly against granting Plaintiff's motion.

4.    Whether Plaintiff Acted in Good Faith.

Although there is no direct evidence of bad faith, Plaintiff's delays and the attorneys' failure to meet and confer before filing the first motion for extension raise concerns regarding good faith. Plaintiff's attorneys filed the first motion for extension on the last possible day without engaging in good faith meet-and-confer efforts, as required by local and chamber rules and despite claiming in the motion that meet and confer efforts were attempted. [Ortiz Decl. ¶ 5h, i.] Additionally, Plaintiff's attorneys delayed the filing despite continuing to actively litigate the federal case and filing a companion case in state court. [Ortiz Decl. ¶¶ 5a-g.] These decisions raise questions as to whether the lack of meet and confer efforts and the delays were for strategic reasons. At a minimum, this factor is neutral.

## IV. CONCLUSION

Plaintiff failed to file a notice of appeal and compounded the error by failing to file a motion for extension of time to appeal by the statutory deadline. Because Plaintiff's errors are of jurisdictional magnitude, he deprived this Court of jurisdiction to rule on the merits of his request for equitable relief. But even if the Court considers the merits of Plaintiff's request, the motion still fails because Plaintiff's attorneys cannot make the requisite showing of excusable neglect under *Pioneer*. For these reasons, the motion for an extension of time to appeal should be denied.

DATED: June 23, 2025

CLAUDIA G. SILVA, County Counsel

By: *s/Robert A. Ortiz*
ROBERT A. ORTIZ, Senior Deputy
Attorneys for Defendants County of San Diego, Stephen McCarthy, Nicolai Ramos, Michael Saunders, Jr., and Casey Dow
E-mail: robert.ortiz@sdcounty.ca.gov